UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGO PERRYMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>LITTON LOAN SERVICING, LP, et al.,<br><br>  Defendants. | Case No.  14-cv-02261-JST<br><br>**ORDER 1) GRANTING MOTIONS TO DISMISS AND 2) GRANTING MOTIONS TO STAY**<br><br>Re: ECF Nos. 126, 135, 146, 150, 166 |

Currently before the Court in this proposed class action challenging Defendants' practices of instituting lender-placed insurance ("LPI") are motions to dismiss filed by Defendants Southwest Business Corporation and Beltline Road Insurance Agency. ECF Nos. 126, 146. Also before the Court are motions to stay filed by Defendants Ocwen Loan Servicing LLC ("Ocwen") and American Security Insurance Company ("ASIC"). ECF Nos. 135, 150.

**I.   Background**

  **A.   Factual Background**

The Factual Allegations made by Plaintiff against Defendants Ocwen and ASIC are described in detail in the Court's order on Defendants' prior motions to dismiss. See ECF No. 100 at 2-7.

Plaintiff makes new allegations against Defendants Southwest and Beltline in her First Amended Complaint ("FAC"), ECF No. 108. Plaintiff now alleges that around March 2014, "Ocwen entered into agreements with defendants Southwest and Altisource . . . to implement a new force-placed insurance program for Ocwen." Id. at ¶ 8. Plaintiff alleges that, after the expiration of Ocwen's force-planned arrangement with Assurant in March 2014, Ocwen hired Defendant Beltline "to negotiate and place a new force-placed insurance program for Ocwen," with Southwest operating as Ocwen's "managing general agent." Id. at ¶ 9. "In this role,

1   Southwest is responsible with managing Ocwen's force-placed insurance program, such as
2   negotiating premiums with force-placed insurers, including ASIC, who continues to force-place
3   insurance on properties within Ocwen's portfolio." Id. "Ocwen promises to give its force-placed
4   insurance business to Southwest," who then "negotiates premiums, prepares policies, and handles
5   renewals and cancellations," for which it receives commissions from insurers. Id. at ¶ 11.
6   Southwest then kicks back 15 percent of the premium on these policies to Beltline, although
7   Beltline "provide[s] little to no services for those commissions." Id.
8       On August 30, 2014, ASIC notified Plaintiff that it would renew her flood insurance policy
9   beginning November 1, 2014. Id. at ¶ 50.

    **B.**    **Procedural Background**

11      Plaintiff Margo Perryman ("Plaintiff") filed a proposed class action complaint in May
12  2014. Class Action Complaint ("Compl."), ECF No. 1.
13      The Court previously dismissed the claims brought against Southwest Business
14  Corporation, finding that judicially-noticed documents demonstrated that Southwest was not an
15  insurer of Plaintiff's property. ECF No. 100 at 15-16.
16      The Court granted Ocwen's motion to dismiss several of Plaintiff's claims, but denied
17  Ocwen's motion to dismiss Plaintiff's claims for breach of contract, breach of the covenant or
18  good faith and fair dealing, RICO violations, and claims arising under the California's Unfair
19  Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, *et seq.*. ECF No. 100. The Court
20  also denied ASIC's motion to dismiss Plaintiff's claim for honest services fraud and claim under
21  the UCL. Id. Plaintiff subsequently filed her FAC. ECF No. 108.
22      Concurrently with this litigation, a nationwide class action relating to lender placed
23  insurance has been pending in the Southern District of Florida before Magistrate Judge Jonathan
24  Goodman. See Lee v. Ocwen Loan Servicing, LLC, Assurant, Inc. and American Security
25  Insurance Co., Case 0:14-60649-JAL (S.D. Fla.). That litigation involves claims against Ocwen,
26  ASIC, and several other defendants. Plaintiff is a member of the Lee class.
27      On January 23, 2015, Judge Goodman preliminarily approved a proposed class action
28  settlement in the Lee case, enjoining "All Settlement Class Members who do not timely exclude

themselves from the settlement class" from "filing, commencing, prosecuting, intervening in, or participating in (as class members or otherwise), any lawsuit in any jurisdiction for the Released Claims." Lee v. Ocwen Loan Servicing, LLC, No. 0:14-CV-60649-LENARD, 2015 WL 178220, at *8 (S.D. Fla. Jan. 13, 2015) report and recommendation adopted, No. 0:14-CV-60649, 2015 WL 309441 (S.D. Fla. Jan. 23, 2015).

### C. Jurisdiction

The Court has jurisdiction over the entirety of the Complaint pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (6), because Plaintiff seeks to certify a class whose aggregate claims exceed $5 million, exclusive of interest and costs, and because at least one member of the proposed class is a citizen of a different state than the Defendants.

## II. Motions to Dismiss

### A. Standard of Review

"A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

On a motion to dismiss, courts accept the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

3

"[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr, 652 F.3d at 1216.

### B. Southwest's Motion

Southwest argues that Plaintiff's claim under California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code Section 17200, *et seq.* should be dismissed. Southwest asserts that Plaintiff fails to allege that Southwest has injured Plaintiff within the meaning of the UCL and that any alleged future injury is completely avoidable.

First, Southwest argues that Plaintiff has not alleged that she has been injured by Southwest, because the FAC challenges the placement of insurance policies on Plaintiff's property on dates prior to Southwest's alleged involvement in the LPI scheme. The FAC states that Ocwen force-placed a policy on Plaintiff's property on December 21, 2013, backdated to November 1, 2013. ECF No. 108 at ¶ 49. The FAC also states that Southwest did not take over as Ocwen's "managing general agent" until March 2014. Id. at ¶ 8-9. Because Plaintiff was covered through November 2014 by a lender-placed policy that began in November 1, 2013, Southwest argues that Plaintiff has not alleged that Southwest was involved in the institution of the challenged November 2013 policy.

Plaintiff argues in opposition that, even if Southwest was not involved in the institution of the November 2013 policy, it was involved in the "management" of that policy beginning in "at least June 2014" and received an unearned commission from Plaintiff, which it then kicked back to Beltline and Altisource, who did not perform any service in exchange for the fee. ECF No. 140 at 1. This theory is not articulated within the FAC, which alleges that Southwest "negotiates premiums, prepares policies, and handles renewals and cancellations," ECF No. 108 at 4 – all actions which occur when a policy is instituted, not during a policy's operative term. Plaintiff's Sixth Claim for Relief – the only one in the FAC brought against Southwest – does not even refer to Southwest by name. ECF No. 108 at 37-39. That cause of action makes specific allegations against certain Defendants, such as Litton and Ocwen, but makes other blanket allegations against "all Defendants." The FAC does not allege sufficient facts regarding Southwest's involvement in

4

the "management" of the policy to establish that Southwest is liable under a cognizable Section 17200 theory of "unfair" practices. Tellingly, in defending these allegations against Southwest's motion, Plaintiff relies not on facts alleged in the FAC, but on facts from defendant Ocwen's responses to interrogatories – responses that were not served until several weeks after the filing of the FAC.

The Complaint does allege that Plaintiff received a notice from ASIC on August 30, 2014 stating that ASIC would automatically renew Plaintiff's flood insurance policy beginning November 1, 2014. ECF No. 108 at ¶ 50. Plaintiff has pled that Southwest was involved in the LPI scheme by November 2014, and thus could plausibly have been involved in the institution of a policy beginning November 2014. But Plaintiff has not pled in the FAC that such a policy was ever subsequently placed on the property or that ASIC charged Plaintiff a greater amount for this policy than the costs incurred to find Plaintiff replacement insurance. Plaintiff admitted on December 1, 2014 that she had "not yet received notice of the charges" for the policy beginning November 2014. ECF No. 140. Nonetheless, the Court notes several months have elapsed since the filing of the FAC and Plaintiff may wish to include more factual detail about whether a new policy was placed on her property beginning in November 2014 in an amended complaint.

Southwest argues that, even if Plaintiff were to plead that Southwest assisted in obtaining a new force-placed policy on Plaintiff's property beginning November 1, 2014 and such a policy charged Plaintiff a greater amount than ASIC's costs, Plaintiff could not argue that such placement would be "unfair" under Section 17200. The Court's previous order ruling on other Defendants' motions to dismiss Plaintiff's UCL claims addressed the argument that Plaintiff's alleged harm was avoidable and thus not "unfair":

> First, [Defendants] argue that courts reject such "unfair" claims where the consumer could reasonably have avoided the challenged harm by taking alternative action. See Davis [v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1170 (9th Cir. 2012)] (rejecting "unfair" prong claim where plaintiff was warned that credit card "restrictions might apply" and "had the opportunity to cancel the account for a full refund"). Plaintiff, of course, had the opportunity to purchase insurance at her own cost and therefore could have avoided the LPI charges. While the Court has some sympathy for this argument, the wrong Plaintiff seeks to redress is the harm of expecting that she would, if she defaulted on her obligation, only be charged the

> costs the servicers actually incurred in seeking replacement insurance. She could not reasonably have avoided that harm without knowing how the Defendants allegedly conspired to set the rates for LPI.

ECF No. 100 at 29-30. Southwest argues that this reasoning does not apply to the placement of the November 1, 2014 policy. Because Plaintiff filed her initial complaint in this action on May 2014, Plaintiff knew when she made her decision to not procure her own flood insurance for the period beginning November 1, 2014 that the force-placed policy would charge her a greater amount than the costs the servicers actually incurred in seeking replacement insurance.

It is true that some courts have concluded that, for a practice to be "unfair" under the UCL, the injury alleged must be one that the consumer "could not reasonably have avoided." Camacho v. Auto. Club of S. California, 142 Cal. App. 4th 1394, 1403 (2006). There are competing tests, however, for defining "unfair" under the UCL, "none of which has yet been adopted as controlling by the California Supreme Court or the Ninth Circuit in the context of consumer fraud." Pirozzi v. Apple, Inc., 966 F. Supp. 2d 909, 921 (N.D. Cal. 2013). As this Court noted in Pirozzi, the Ninth Circuit has expressly declined to apply the "unfairness" test that requires a plaintiff to demonstrate the harm was not avoidable "until the California Supreme Court clarifies the issue in the consumer fraud context." Pirozzi, 966 F. Supp. 2d at 922 (citing Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)). Following Lozano's guidance, in Pirozzi this Court evaluated an "unfair" UCL claim under the balancing test set forth in South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App. 4th 861 (1999):

> The test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . .

Consistent with this precedent, the Court will apply South Bay's balancing test in this case, not the Camacho test.[1]

---

[1] Plaintiff also alleges in her opposition that Southwest "played a role in force-placing insurance on Plaintiff's property in 2011." ECF No. 140 at 4. Plaintiff made such an allegation in her first complaint, but this claim was dismissed when the Court observed that judicially-noticeable documents indicated that American Modern had issued that policy rather than Southwest. ECF No. 100 at 15-16. The FAC does not make such an allegation, but instead states "American

6

In support of their claim that the Ninth Circuit has rejected "unfair" UCL claims where Plaintiff could have avoided a harm, Defendants cite Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1170 (9th Cir. 2012). But the Ninth Circuit acknowledged in Davis that California appellate courts were divided on the issue and declined to endorse a particular test, instead concluding that the plaintiff had failed to state a claim under any definition. Although the court noted Plaintiff's failure to read the terms and conditions before agreeing to them and his refusal to cancel his card within 90 days in applying the South Bay balancing test, those facts went to the Court's analysis of the gravity of the harm to the plaintiff. Nonetheless, the court's conclusion that the harm could have been avoided was not by itself dispositive of the balancing test. The court went on to note that defendant Best Buy also had a "strong justification for publishing the advertisement" in that case and had "justifiably relied on . . . federal guidance." Id. at 1171. Given the diminished gravity of the harm to the plaintiff and the defendant's persuasive justifications of its own motives, the court found the balancing test could not possibly be satisfied.

Even if this Court were to accept that the impact of Southwest's practice on Plaintiff is lessened because Plaintiff could have avoided the harm by procuring her own insurance, Southwest has not offered any "reasons, justifications and motives" indicating that the LPI scheme has any utility. Therefore, a factfinder could find that the balancing test tips in favor of a conclusion that Southwest acted in violation of the UCL's "unfair" prong. See id. (noting that generally "what is 'unfair' is a question of fact, 'which involves an equitable weighing of all the circumstances'" (quoting Bardin v. Daimlerchrystler Corp., 136 Cal.App.4th 1255 (2006))). If Plaintiff were to plead that Southwest participated in the force-placement of an "unfair" policy on her property beginning in November 2014, such a claim would not be barred because the injury

---

Modern, or an insurance agent (possibly defendant Southwest), monitored Litton's loan portfolio for lapses in borrowers' insurance coverage" during this period. ECF No. 108 at ¶ 6. This threadbare allegation, diluted even further by Plaintiff's use of the word "possibly," does not suffice to plausibly plead a claim that Southwest was involved in the 2011 force placement. Plaintiff's opposition alleges that Rule 26 disclosures obtained from American Modern indicates Southwest may in fact have been involved in monitoring these policies. ECF No. 140 at 4. If Plaintiff still wishes to pursue claims against Southwest relating to the 2011 policy, she should add additional factual allegations supporting claims of Southwest's involvement to her amended complaint.

1 would have been avoidable.

2 Nonetheless, the FAC does not currently contain such an allegation. Although Plaintiff's opposition indicates that Plaintiff now possesses facts indicating that Southwest managed her force-placed policy beginning in June 2014, and was involved in the placement of a November 2014 policy on her property, these allegations are not articulated and factually supported within the FAC. The Court will therefore dismiss these claims, but grant Plaintiff leave to amend to include such allegations.

### C. Beltline's Motion

Beltline moves to dismiss the FAC on largely the same grounds as Southwest. The FAC states that Beltline was hired by Ocwen "to negotiate and place a new force-placed insurance program" in March 2014. ECF No. 108 at ¶ 9. Beltline argues it therefore was not involved in the institution of the policies challenged in the FAC, the latest of which began in November 2013. Plaintiff notes in her opposition to Beltline's motion that, following the filing of the FAC, she obtained information from interrogatories served on Ocwen indicating that Beltline's participation as the broker of record on Plaintiff's property actually began as early as August of 2013. ECF No. 156 at 3. This allegation does not appear in the FAC.

Beltline also argues the FAC does not allege that Plaintiff had a policy force-placed on her property in November 2014. Plaintiff now argues in her opposition that Ocwen's interrogatories indicate that Ocwen did procure a policy on Plaintiff's property beginning November 2014. ECF No. 156 at 4. The Court will grant Beltline's motion to dismiss Plaintiff's Section 17200 with leave to amend to allow Plaintiff to plead allegations included in her opposition to Beltline's motion to dismiss.[2]

### III. Motions to Stay

Ocwen and ASIC have both filed motions to stay this litigation pending approval of the

---

[2] Beltline also argues that, should Plaintiff allege that an "unfair" force-placed policy was instituted in November 2014, such a policy would have been avoidable. For the same reasons the Court found Southwest's argument on this point unavailing, it also finds that Plaintiff could allege Beltline violated the UCL.

8

1  class action settlement in Lee. ECF Nos. 135, 150. Prior to the preliminary approval of the
2  settlement in Lee, Plaintiff acknowledged "that it would be inefficient to continue the litigation
3  against Ocwen and ASIC pending preliminary approval – or disapproval – of the proposed
4  settlement." ECF No. 157. Plaintiff therefore did not oppose staying the instant litigation as to
5  Ocwen and ASIC.[3]

Nonetheless, Plaintiff argued then – and still maintains following the preliminary approval of the Lee settlement – that limited discovery should continue in this case as to Ocwen and ASIC, in order to assist Plaintiff in deciding whether she should support or object to the proposed settlement in Lee. Id., see also First Discovery Letter Brief at ECF No. 166. Plaintiff argues that the Lee settlement is a "claims-made settlement," which requires class members to fill out a claim form in order to obtain damages. Plaintiff argues that claims-made settlements are generally disfavored in this District and notes that the Federal Judicial Center instructs that "[w]hen the defendant already holds information that would allow at least some claims to be paid automatically, those claims should be paid directly without requiring claim forms." ECF No. 157 at 1.

Plaintiff thus seeks to continue discovery in this litigation to determine whether Ocwen and ASIC could feasibly calculate the Lee Settlement Class Members' entitlement to relief without an individualized review of each file. If class members' damages could be calculated mechanically, Plaintiff argues that there would be no justification for requiring a "claims-made settlement" in Lee. Plaintiff argues that, should discovery in the instant litigation reveal this to be the case, she may opt to object to that proposed settlement in Lee.

Plaintiff cites authority for the unobjectionable proposition that discovery originally obtained in one case ordinarily may be used later in another case. See, e.g., Cipollone v. Liggett Grp., Inc., 113 F.R.D. 86, 91 (D.N.J. 1986) ("a number of courts have rejected requests to limit the

---

[3] Beltline has filed a "joinder" in Ocwen and ASIC's motions to stay. ECF No. 155. Plaintiff opposes the stay as to Beltline and argues Beltline is "not even a defendant in Lee." ECF No. 157 at n. 1. Beltline has not filed a procedurally proper motion demonstrating it is entitled to a stay of this litigation. The Court therefore will not stay the litigation as to Defendant Beltline at this time.

use of discovery to the litigation in which it is initially obtained"). But Plaintiff cites no authority for the much more remarkable proposition that a party may propound discovery in one pending class action *for the purpose* of using it in another. The judge to whom such requests should be directed, if judicial action is required, is the judge in the other case – not the undersigned.

Moreover, that other judge has already spoken to this question. The Lee litigation is before Judge Goodman, who has preliminarily enjoined "All Settlement Class Members who do not timely exclude themselves from the settlement class from . . . participating in (as class members or otherwise), any lawsuit in any jurisdiction for the Released Claims." Lee, 2015 WL 309441 at *8. Plaintiff is a Settlement Class Member in Lee and therefore is enjoined from participating in a lawsuit against Ocwen and ASIC regarding the claims covered by the Lee settlement. If Plaintiff wants to obtain discovery for use in objecting to the Lee settlement, she must seek it in the Lee litigation.

Therefore, the motions to stay the instant litigation filed by Defendant Ocwen and Defendant ASIC are hereby granted. Within 7 days of Judge Goodman's order on final approval of the Lee settlement, Defendants Ocwen and ASIC shall file a notice with the Court. This notice should also indicate whether Defendants intend to file any further motions in this litigation as a result of the order in Lee.

**IV.   Conclusion**

The Court grants Defendants Southwest and Beltline's motions to dismiss, but grants Plaintiff leave to amend her complaint to add additional factual support for the allegations contained therein against these Defendants. The Court hereby stays the litigation as to Defendants Ocwen and ASIC.

IT IS SO ORDERED.

Dated: February 26, 2015

JON S. TIGAR
United States District Judge