UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGO PERRYMAN,<br><br>   Plaintiff,<br><br>   v.<br><br>LITTON LOAN SERVICING, LP, et al.,<br><br>   Defendants. | Case No. 14-cv-02261-JST   (KAW)<br><br>**ORDER REGARDING 7/9/2015 JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 199 |

On July 9, 2015, Plaintiff Margo Perryman and Defendant Ocwen Loan Servicing, LLC ("Ocwen") filed a joint letter concerning whether Plaintiff could compel further responses to Interrogatory No. 16, which seeks information about how Ocwen maintains information about putative class members, allegedly force-placed into an insurance policy by Defendant Litton Loan Servicing, LP ("Litton"), in its loan servicing system and other databases. (7/9/15 Joint Letter, "Joint Letter," Dkt. No. 199 at 1.)

Upon review of the joint letter, and for the reasons set forth below, the Court finds that Plaintiff's interrogatory, even as narrowed, is overbroad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence.

## I.   BACKGROUND

Plaintiff Margo Perryman owns a home in Edgewood, California. (First Am. Compl., "FAC," Dkt. No. 108 ¶ 41.) The deed of trust required Plaintiff to insure the property against fire, floods, and/or other hazards. (FAC ¶ 42.) If a borrower fails to maintain the required coverage, the deed of trust permits the lender to obtain the required insurance coverage at the borrower's expense. (FAC ¶ 42; FAC, Ex. A.) In 2011, FEMA re-drew the flood maps in the area that included Plaintiff's property, and determined that she was now in a flood zone and was required to

1  purchase flood insurance. (Joint Letter at 4.)

2        As of February 22, 2011, Litton Loan Servicing, LP ("Litton") serviced Plaintiff's loan and
3  maintained an escrow account, and sent Plaintiff a notice that her home was located in a flood
4  zone and she was required to provide proof of flood insurance within 30 days. (FAC ¶ 43.)
5  Thereafter, Litton purchased a flood insurance policy at Plaintiff's expense. (FAC ¶¶ 44-45.)
6  During that time, Litton maintained data regarding the loans it serviced in a loan servicing system
7  called RADAR. (Joint Letter at 3.)

8        In November 2011, the servicing of Plaintiff's loan was transferred to Ocwen Loan
9  Servicing, LLC ("Ocwen"). (Joint Letter at 4.) Plaintiff continued to refuse to obtain her own
10  flood insurance, so Ocwen placed flood insurance on her property and charged her the premium
11  for that coverage. *Id.* Ocwen maintains data regarding the loans it services in a loan servicing
12  system called RealServicing. (Joint Letter at 3.)

13        In May 2014, Plaintiff's filed this lawsuit alleging that Defendants Litton, Ocwen,
14  American Modern Home Insurance Company, American Security Insurance Company ("ASIC"),
15  and others engaged in wrongful and collusive practices that drove-up the price of lender-placed
16  insurance ("LPI"). The mortgages Litton and Ocwen service require borrowers to maintain
17  acceptable insurance on the property securing their loans. When borrowers do not obtain insurance
18  coverage in the amounts Litton and Ocwen require, they purchase insurance for the borrowers and
19  charge the borrower for the LPI.

20        Claims relating to the Ocwen placement are currently enjoined pending settlement
21  proceedings in the nationwide class action *Lee v. Ocwen Loan Servicing, LLC, et al. ("Lee")*,
22  Case No. 0:14-cv-60649-JG (S.D. Fla.), of which Plaintiff is a class member. (*See* Dkt. No. 177 at
23  2.) On January 23, 2015, the *Lee* court preliminary enjoined class members from participating in
24  any lawsuit in any jurisdiction for the related claims. *Lee*, 2015 WL 178220, at *8 (S.D. Fla. Jan.
25  13, 2015) *report and recommendation adopted*, No. 0:14-CV-60649, 2015 WL 309441 (S.D. Fla.
26  Jan. 23, 2015).

27        On February 26, 2015, the district court in the instant matter declined Plaintiff's request to
28  compel discovery relating to the *Lee* class, and stayed the instant litigation as to Ocwen and ASIC

United States District Court
Northern District of California

1  pending settlement. (Dkt. No. 177 at 10.)  Defendants Ocwen and ASIC were ordered to file a

2  notice within seven days of the final order of approval of the *Lee* settlement. *Id.*  Thereafter,

3  Plaintiff's motion to compel discovery in the *Lee* case were denied. *Lee*, Case No. 0:14-cv-60649-

4  JG (S.D. Fla. Apr. 28, 2015), ECF No. 145.  Final approval of the settlement is still pending.

5    On June 12, 2015, Plaintiff and Ocwen filed a joint letter regarding Interrogatory No. 16.

6  (Dkt. No. 193.)  Subsequently, all discovery disputes in this matter were referred to the

7  undersigned for disposition. (Dkt. No. 196.)  Since the letter did not comply with the Court's

8  standing order, the parties were ordered to further meet and confer and file a revised joint letter in

9  the format specified to facilitate the Court's resolution of the remaining disputes.

10    During the further meet and confer efforts, Plaintiff narrowed the scope of Interrogatory

11  No. 16, and Ocwen agreed to fully respond by July 8, 2015, regarding how Litton maintained such

12  data in RADAR, but refused to answer concerning how Ocwen currently maintains its data in

13  RealServicing. (Joint Letter at 3.)

14    On July 9, 2015, the parties filed the instant joint letter. (Dkt. No. 199.)

## II.  DISCUSSION

Interrogatory No. 16 seeks information regarding how Ocwen maintains information about the Litton class members in its loan servicing systems and other electronic databases. Specifically, Interrogatory No. 16 seeks the following information:

> (1) The names of all databases, their geographic location, and the companies maintaining the databases that contain data regarding Borrowers' loans;
>
> (2) Whether the databases that house information regarding Borrowers' loans utilize Oracle or Microsoft SQL database applications/server systems;
>
> (3) A complete list of all data points or fields housed on Your loan servicing systems describing the information that can be queried about Borrowers;
>
> (4) A complete list of data points and fields housed on Your loan servicing systems reflecting information that can be queried about Borrowers who were or are force-placed into an insurance policy.

(Pl.'s Special Interrog., Dkt. No. 199, Ex. A at 5.)  In the joint letter, Plaintiff contends that, during

the meet and confer efforts, she limited the information sought "to encompass information only about those Borrowers who were charged by Litton or any of Litton's affiliates for force-placed insurance." (Joint Letter at 2.) Ocwen agreed "to provide a full and complete response to interrogatory 16, and all of its subparts, regarding how Litton maintained such data in Litton's legacy loan servicing system of record, which is called "RADAR" by July 8, 2015. (Joint Letter at 3.) Ocwen, however, refused to "to provide a full and complete response concerning how Ocwen *currently* maintains data about the Litton putative classes in Ocwen's *current* loan servicing system of record, which is called "RealServicing." *Id.* (emphasis in original.)

Ocwen, however, contends that with the claims against it in stasis, Plaintiff's remaining claims are against Litton. (Joint Letter at 5.) While Ocwen concedes that RealServicing contains data concerning borrowers from the Litton class, it argues that RADAR, as Litton's servicing system, contains all information responsive to Interrogatory No. 16, such that it need not provide information concerning RealServicing. *Id*.

Plaintiff claims that this limitation is unacceptable, because, to support class certification, "Plaintiff must show that the Litton classes are ascertainable and can be identified from Ocwen's records." (Joint Letter at 3.) This is not compelling for two reasons. First, based on Ocwen's ability to turn over records from RADAR, it appears that RADAR is part of Ocwen's business records, enabling Plaintiff to show that the Litton class is ascertainable from Ocwen's records. Second, Plaintiff is not entitled to information in the format, or database, of her choosing. Rather, Ocwen can satisfy its discovery obligations if it has both preserved RADAR and produced all responsive information from that database. Indeed, data contained in RealServicing appears to be duplicative as it pertains to the purported Litton class, such that it is unlikely to lead to the discovery of admissible evidence. Instead, it appears that the tangible benefit to obtaining information from RealServicing would be to ascertain information regarding the *Lee* class, which is not permitted at this juncture.

Accordingly, to the extent that Interrogatory No. 16 seeks information from RealServicing, it is overbroad, unduly burdensome, and not likely to lead to the discovery of admissible evidence. Ocwen shall, however, fully respond, as previously offered, regarding how Litton maintained such

4

data in RADAR.

### III. CONCLUSION

In light of the foregoing, Plaintiff's request to compel information pertaining to the RealServicing system in response to Interrogatory No. 16 is DENIED. If Ocwen has not already done so, it is ordered to provide a complete response to Interrogatory No. 16 regarding how Litton maintained such data in RADAR within 7 days of this order.

IT IS SO ORDERED.

Dated: August 7, 2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge